Filed 2/13/25  P. v. Sandoval CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JORGE SANDOVAL,<br><br>Defendant and Appellant. | B333446<br><br>(Los Angeles County<br>Super. Ct. No. BA240842-03) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael E. Pastor, Judge.  Affirmed.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, Melanie Dorian, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

In 2008 a jury convicted Jorge Sandoval of first degree felony murder and attempted robbery and found true the allegation he committed the murder during the attempted robbery. We affirmed the murder and attempted robbery convictions in Sandoval's direct appeal.

Sandoval now appeals from the superior court's order denying his petition for resentencing under Penal Code former section 1170.95 (now section 1172.6) after an evidentiary hearing.[1] Sandoval argues substantial evidence did not support the court's finding he is guilty of murder under current law as a major participant in an underlying felony who acted with reckless indifference to human life. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Sandoval and His Codefendants Try To Rob*
     *a Hardware Store*

In the early afternoon of December 17, 2002 Alejandro Viveros drove Jorge Martinez and Sandoval to a hardware store at the corner of an intersection. Martinez and Sandoval each carried a loaded nine-millimeter, semi-automatic handgun. Viveros dropped Martinez and Sandoval at the store, drove a short distance away, and remained with the car.

Sandoval walked into the store first and approached the store owner, Claro Cortez, who was with a customer in one of the aisles. Martinez followed Sandoval into the store and approached

_____

[1]    Statutory references are to the Penal Code.

2

Cortez's wife, Elvia, who was standing at the cash register. Martinez, who had his gun out, stood close to Elvia and said that "it was a robbery and that [she] should open the cash register." As Elvia struggled to open the register, gunshots were fired.

According to Sandoval, who testified at trial,[2] he approached and greeted Cortez, and Cortez pulled out a revolver and started shooting at Sandoval. Sandoval fired one shot at Cortez, but his gun jammed and he was unable to fire any additional rounds. Sandoval claimed he fired his gun at Cortez "to survive." Martinez, who also testified at trial, said he fired seven shots at Cortez. Cortez was hit six times, collapsed, and later died of his injuries. A customer was also killed in the gunfire. The entire incident happened "very quickly," lasting about a minute.

Martinez and Sandoval ran from the store to Viveros's car, and the three men drove away from the scene. Police officers who happened to be nearby stopped the car a few blocks from the store, arrested all three men, and recovered two nine-millimeter handguns. Sandoval had been shot in the leg and was taken to a nearby hospital. During an interview with police officers at the hospital, Sandoval admitted he and Martinez had gone to the hardware store intending to rob it.

---

[2] This was the second trial for Martinez and Sandoval. A jury convicted the two men in 2004. We reversed those convictions because the trial court required Sandoval, Martinez, and Viveros to share one interpreter without a valid waiver. (See *People v. Martinez* (Jan. 30, 2007, B174379) [nonpub. opn].) In 2008 Martinez and Sandoval were retried together with separate juries.

B.     *A Jury Convicts Sandoval of First Degree Murder and Attempted Robbery, and We Affirm*

The People charged Sandoval with two counts of first degree murder, one for Cortez and one for the customer, although the court subsequently granted a motion by Sandoval for a judgment of acquittal on the murder count for the customer. The People also charged Sandoval with two counts of attempted second degree robbery (§§ 211, 664). The People alleged Sandoval committed the murder while committing an attempted robbery (§§ 187, subd. (a), 190.2, subd. (a)(17)). The People also alleged that, for the murder count for Cortez and the two attempted robbery counts, Sandoval personally used and personally and intentionally discharged a firearm (§ 12022.53, subds. (b) & (c)) and that a principal was armed with a firearm during commission of the offenses (§ 12022, subd. (a)(1)). The People tried the case on a felony-murder theory, seeking to prove that Martinez and Sandoval entered the store with the intent to rob it and that the murder of Cortez occurred during the attempted robbery.

The jury convicted Sandoval on the remaining first degree murder count and the two attempted robbery counts. The jury found true allegations that Sandoval committed the murder while committing an attempted robbery, that Sandoval personally used and personally and intentionally discharged a firearm, and that a principal was armed with a firearm during the commission of the offenses. The trial court sentenced Sandoval to a prison term of life without the possibility of parole on the murder count, plus 20 years pursuant to section 12022.53, subdivision (c). The court imposed but stayed under section 654 execution of a term of two years for each attempted robbery conviction and the related

4

firearm enhancements. We affirmed the judgment in Sandoval's second direct appeal. (*People v. Martinez* (June 22, 2009, B209063) [nonpub. opn.].)

C.    *The Superior Court Denies Sandoval's Petition for Resentencing under Section 1172.6*

In August 2022 Sandoval filed a petition for resentencing under section 1172.6, checking boxes on a form petition stating he was eligible for relief and asking the court to appoint counsel to represent him. The superior court appointed counsel, the People filed a written response to the petition, and Sandoval filed a reply. Based on the parties' stipulation, the court found Sandoval stated a prima facie case for relief and set the matter for an evidentiary hearing.

At the evidentiary hearing in August 2023 neither Sandoval nor the People presented any additional evidence. The court stated that "certainly the petitioner in this case was involved very directly in the planning of the underlying robbery and carrying it out. Very significantly, the defendant/petitioner put himself right at the scene, taking an active role, and the petitioner acknowledged it." The court stated that "the record of conviction reveals, clearly, that the petitioner was individually and personally armed with a firearm and was acting, not as someone to simply distract or assist in a getaway, but right there to confront anybody at the store who may want to challenge the authority of these two armed gunmen. . . . The court can easily conclude that, in undertaking the actions that the petitioner did in this case, and the role and responsibility, that that significantly demonstrated reckless indifference to human life. Mr. Sandoval was ready, willing, and able to ratchet up the

circumstances and to enter a new and different role as an armed gunman, and really escalate any contact with an individual in the store, and use a firearm to do so."

The court also found that Sandoval "was personally present at the scene. He was not standing outside, a block away, in a car, in a home. He was right there in the midst of things, and that goes beyond being a major participant. Being involved in planning, actually going to the scene, actually entering the store with another individual, his partner, who was armed with a firearm as well, that takes it to a whole different level in distinguishing and distinguishes these facts from facts that may have been present in other cases. This is much more aggravated, in terms of the preparedness of the petitioner and his willingness to take this to a different level." The court concluded: "Specifically under [*People v. Clark* (2016) 63 Cal.4th 522], as articulated in *Clark* and its progeny, it's quite obvious that Mr. Sandoval was aware of the nature of the robbery, came armed himself, obviously knew that his cohort was armed and he went anyway, and got involved in a situation where he was taking a direct role in terms of, as far as this court is concerned, employing lethal force on the decedent. That is quite significant." The court denied the petition, and Sandoval timely appealed.

## DISCUSSION

### A. *Section 1172.6*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a person guilty of murder and significantly narrowing the felony-

murder exception to the malice requirement for murder. (*People v. Arellano* (2024) 16 Cal.5th 457, 467-468; *People v. Curiel* (2023) 15 Cal.5th 433, 449 (*Curiel*); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 [felony murder]; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 [natural and probable consequences].)  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on a person's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule.  (§§ 188, subd. (a)(3), 189, subd. (e); *Arellano*, at pp. 467-468; *Curiel*, at p. 449.)  That provision requires the People to prove specific facts relating to the defendant's culpability:  The defendant was the actual killer (§ 189, subd. (e)(1)); the defendant, though not the actual killer, with the intent to kill assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in a felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).  (See *Curiel*, at p. 448; *Strong*, at p. 708.)

Section 1172.6 authorizes a person convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts, if he or she could not now be convicted of murder because of the changes the Legislature made effective 2019 to the definitions of the crime.  (See *People v. Arellano, supra,* 16 Cal.5th at pp. 468-469; *Curiel, supra,* 15 Cal.5th at pp. 449-450.)  If a petition under section 1172.6 contains all the required information, the court must appoint counsel to represent the petitioner, if requested.

(§ 1172.6, subd. (b)(1)(A), (3); *People v. Lewis* (2021) 11 Cal.5th 952, 962-963; *People v. Foley* (2023) 97 Cal.App.5th 653, 659.) The People must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (§ 1172.6, subd. (c).)

Where, as here by stipulation, the petitioner has made a prima facie showing he or she is entitled to relief under section 1172.6, the court must hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).) The petitioner and the People may also offer new or additional evidence. (*Ibid*.; see *People v. Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

On appeal from an order denying a petition under section 1172.6, we review the superior court's factual findings for substantial evidence. (*People v. Villagrana* (Jan. 21, 2025, No. B331439) ___ Cal.App.5th ___, ___ [2025 WL 258597, at p. 2]; *People v. Hill* (2024) 100 Cal.App.5th 1055, 1066; *People v. Montanez* (2023) 91 Cal.App.5th 245, 270.) "In reviewing the trial court's findings for substantial evidence, we . . . examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the necessary fact] beyond a reasonable doubt. [Citation.] . . . While the trial judge must review all the relevant evidence, evaluate and resolve

8

contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Pittman* (2023) 96 Cal.App.5th 400, 414, internal quotation marks omitted; see *Villagrana*, at p. ___ [p. 2].) "'"Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence."'" (*People v. Navarro* (2021) 12 Cal.5th 285, 339; see *People v. Brooks* (2017) 3 Cal.5th 1, 57; *People v. Davis* (2024) 107 Cal.App.5th 500.)

### B.  *The Superior Court Did Not Err in Denying Sandoval's Petition Under Section 1172.6*

#### 1.  *Applicable Law*

Section 189, subdivision (e)(3), provides that a person who participates in one of the felonies listed in section 189, subdivision (a), may be liable for murder if the People prove he or she "'was a major participant in the underlying felony and acted with reckless indifference to human life,'" within the meaning of section 190.2, subdivision (d).  (*Curiel*, *supra*, 15 Cal.5th at p. 448; see *People v. Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Gentile*, *supra*, 10 Cal.5th at pp. 842-843.)  The Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark*, *supra*, 63 Cal.4th 522 "clarified the meaning of the special circumstances statute" (*In re Scoggins* (2020) 9 Cal.5th 667, 676) and identified "a nonexhaustive list of considerations" relevant to whether a defendant was culpable for murder under section 189,

9

subdivision (e)(3) (*Strong*, at pp. 706-707; see *People v. Ramirez* (2021) 71 Cal.App.5th 970, 986).

Sandoval does not challenge the superior court's finding he was a major participant in the attempted robberies.  He challenges only the court's finding he acted with reckless indifference to human life.  "Reckless indifference to human life has a subjective and an objective element.  [Citation.]  As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.]  As to the objective element, '"[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."'" (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677; see *People v. Hill*, *supra*, 100 Cal.App.5th at p. 1074.) "Awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' satisfies the constitutional minimum." (*People v. Banks*, *supra*, 61 Cal.4th at p. 808; *People v. Underwood* (2024) 99 Cal.App.5th 303, 316-317.)

To determine whether a defendant acted with reckless indifference to human life under section 190.2, subdivision (d), courts consider, among other factors, the following:  "Did the defendant use or know that a gun would be used during the felony?  How many weapons were ultimately used? Was the defendant physically present at the crime?  Did he or she have the opportunity to restrain the crime or aid the victim?  What

10

was the duration of the interaction between the perpetrators of the felony and the victims?  What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force?  What efforts did the defendant make to minimize the risks of violence during the felony?"  (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677; see *People v. Clark*, *supra*, 63 Cal.4th at pp. 618-623; *People v. Hill*, *supra*, 100 Cal.App.5th at pp. 1074-1075.)  "No one of these considerations is necessary, nor is any one of them necessarily sufficient."  (*People v. Banks*, *supra*, 61 Cal.4th at p. 803; see *Clark*, at p. 618; *Hill*, at p. 1075.)

> 2. *Substantial Evidence Supported the Superior Court's Finding Sandoval Acted with Reckless Indifference to Human Life*

The evidence relating to the first factors, whether Sandoval used or knew a gun would be used during the felony and how many weapons were ultimately used, supported the court's finding Sandoval acted with reckless indifference to human life.  Although "a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life" (*People v. Clark*, *supra*, 63 Cal.4th at p. 618; see *People v. Ramirez*, *supra*, 71 Cal.App.5th at p. 988), a "defendant's *use* of a firearm, even if the defendant does not kill the victim or the evidence does not establish which armed robber killed the victim, can be significant to the analysis of reckless indifference to human life" (*Clark*, at p. 618).  Sandoval and Martinez were each armed with a loaded nine-millimeter, semi-automatic handgun, and Sandoval was aware Martinez was armed with that weapon. (See *In re McDowell* (2020) 55 Cal.App.5th 999, 1013 [substantial evidence supported a finding of reckless indifference to human

11

life where the defendant was armed with a knife and knew his confederate was armed and prepared to use his gun]; cf. *People v. Guiffreda* (2023) 87 Cal.App.5th 112, 126 [substantial evidence did not support a finding of reckless indifference to human life where the defendant was unarmed and did not know her confederates planned to use a deadly weapon]; *Ramirez*, at p. 988 [substantial evidence did not support a finding of reckless indifference to human life where there was no evidence the defendant was armed or supplied the murder weapon].) And as the jury found, Sandoval personally and intentionally discharged his firearm during the attempted robbery. These facts distinguish Sandoval from felony-murder defendants who did not act with reckless indifference to human life because they "'simply had awareness their confederates were armed and armed robberies carried a risk of death.'" (*Clark*, at p. 618.)

The evidence on the second and third factors, whether Sandoval was physically present at the crime or had the opportunity to restrain the crime or aid the victim, also supported the superior court's finding, at least in part. Sandoval was physically present inside the store during the entire incident, though it is unclear whether, from where he was standing, he could have discouraged Martinez from shooting Cortez.[3] (Cf. *In re Scoggins*, *supra*, 9 Cal.5th at p. 678 [unarmed defendant

---

[3] Given Sandoval's testimony he shot Cortez in self-defense and was only trying to survive after Cortez shot at him first, it is unlikely Sandoval, if he had the opportunity to restrain Martinez, would have tried to restrain him. To the contrary, under his version of the events, Sandoval would have encouraged Martinez to keep shooting to defend against Cortez's attack.

12

was across the street from the incident and unable to control his confederate's act of shooting the victim].)

Some of the other factors were either neutral on whether, or weighed against finding, Sandoval acted with reckless indifference to human life. The duration of the crimes was short. (See *People v. Keel* (2022) 84 Cal.App.5th 546, 561-562 [defendant's culpability is reduced where the "'evidence tended to show that the shooting was a "somewhat impulsive" response to the victim's unexpected resistance, as opposed to the culmination of a prolonged interaction that increased the opportunity for violence'"]; *People v. Ramirez, supra*, 71 Cal.App.5th at p. 989 [attempted carjacking occurred so quickly that the defendant had "no realistic opportunity to intervene" before his confederate opened fire].) And there was no evidence that Sandoval knew or suspected Martinez had any particular propensity toward violence or that Martinez had committed any prior (charged or uncharged) violent crimes. (See *People v. Guiffreda, supra*, 87 Cal.App.5th at p. 128 [substantial evidence did not support a finding of reckless indifference to human life where there was no evidence suggesting the defendant knew her codefendant planned to use a weapon during the robbery or had previously committed violent crimes].)

But the evidence relating to the final factor, whether Sandoval made any effort to minimize the risks of violence during the felony, strongly supported the court's finding Sandoval acted with reckless indifference to human life. Not only did Sandoval do nothing to minimize the risk of violence during the robbery, his actions increased the risk violence would occur. In addition to bringing a loaded firearm to the hardware store, Sandoval behaved aggressively. As the superior court observed, Sandoval

13

was not merely a lookout: He directly approached Cortez and exchanged gunfire with him moments after entering the store. In addition, the robbery occurred in the early afternoon during the store's regular business hours, when customers and employees were likely to be present. (Cf. *People v. Clark*, *supra*, 63 Cal.4th at pp. 621-622 [defendant minimized the risk of violence by planning to rob a store after business hours when fewer employees would be present and by directing his confederate to use an unloaded firearm].) The exchange of gunfire killed a customer. Nor did Sandoval attempt to aid the two gunshot victims. Instead, he fled from the scene and attempted to escape with Martinez in their getaway car. (See *Clark*, at p. 619 [defendant acted with reckless indifference to human life by failing to aid a wounded victim]; *In re Parrish* (2020) 58 Cal.App.5th 539, 544 [defendant acted with reckless indifference to human life by failing to pause to aid or comfort victim].)

Sandoval suggests the evidence showed no more than a "'garden-variety armed robbery, where death might be possible but not probable.'" (See *People v. Banks*, *supra*, 61 Cal.4th at p. 802.) The Supreme Court in *Clark* stated there must be something "in the plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery" to show reckless indifference for human life. (*People v. Clark*, *supra*, 63 Cal.4th at p. 623.) But the Supreme Court also clarified a "garden-variety armed robbery" is a "robbery in which the *only* factor supporting reckless indifference to human life is the fact of the use of a gun." (*Id*. at p. 617, fn. 74, italics added.) As discussed, there was much more to the armed robbery here. Sandoval came to the hardware store with a loaded firearm and

immediately confronted Claro Cortez, which caused Cortez and Sandoval to exchange gunfire moments after Sandoval and Martinez entered the store. Sandoval was not simply standing by in case Martinez needed backup or watching for the police. Sandoval escalated the robbery into a three-way gun battle that resulted in the death of two people. Those actions supported the court's finding Sandoval acted with reckless indifference to human life.

## DISPOSITION

Sandoval's request for judicial notice is granted. The order denying Sandoval's petition for resentencing is affirmed.


SEGAL, J.


We concur:


MARTINEZ, P. J.


FEUER, J.

15